Michael S. Adler, SBN 190119
madler @ ta-llp.com
TANTALO & ADLER
1901 Avenue of the Stars, Ste. 1000
Los Angeles, CA 90067

Telephone: (310) 734-8695
Fax: (310) 734-8696

Attorneys for Defendant
MARIO MORENO IVANOVA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDUARDO MORENO LAPARDE,

Plaintiff,

v.

COLUMBIA PICTURES INDUSTRIES, INC., a California corporation, MARIO MORENO IVANOVA, an individual, and as Executor of THE ESTATE OF MARIO MORENO REYES, et al.,

Defendants

AND RELATED CROSS-CLAIMS, COUNTER CLAIMS, AND THIRD PARTY CLAIMS.

CASE NO. 97-0615 RSWL (CTx)

Hon. Ronald S.W. Lew

**DEFENDANT MARIO MORENO IVANOVA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION TO PURGE CONTEMPT AND QUASH BENCH WARRANT**

Date: August 19, 2014
Time: 10 a.m.
Court: Spring Street Courtroom 21______

## I. **Introduction**

As part of a series of litigations over the rights to various films starring legendary Mexican Actor Mario Moreno Reyes (*aka* Cantinflas), Columbia Pictures sought and received two orders of civil contempt against Cantinflas' son, defendant and contemnor Mario Moreno Ivanova ("Mr. Ivanova"). The civil contempt orders required Mr. Ivanova to disclose various activities, renounce certain efforts to distribute the Cantinflas films, and turn over certain film elements on those films. [Dkt. # 933, Dkt. # 939, Dkt. #948, Dkt. #950 (collectively, the "Contempt Orders").] Pursuant to the Contempt Orders, Mr. Ivanova was ordered to be imprisoned until he complied with the terms of the Orders. [*Id.*] Since Mr. Ivanova resides in Mexico, the result of the Contempt Orders is that Mr. Ivanova has been unable to come to the United States.

In the decade since the Contempt Orders, Mr. Ivanova has settled with Columbia Pictures and – to the extent in his power – complied with the obligations required by the Contempt Order. Civil contempt orders are designed to coerce compliance, and they must be discharged once a contemnor has either complied with the order or demonstrated that he cannot comply with the order since there is no more purpose to comply. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911) (civil contempt only to "coerc[e] the defendant to do" what the court previously ordered); *Turner v. Rogers*, -- U.S. ---, 131 S.Ct. 2507, 2516, 180 L.Ed.2d 452 (2011); *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548 75 L.Ed.2d 521 (1983). Columbia Pictures has informed Mr. Ivanova's current counsel that **Columbia Pictures has no objection to the purging of the Contempt Orders or the quashing of the bench warrant issued pursuant to those Contempt Orders.**

In other words, although it arises out of many years of contentious litigation, this is a straight-forward and unopposed motion. Mr. Ivanova brings this motion now

because he has been invited to travel to Los Angeles for the August 27, 2014 premiere of a biography about his late father, Cantinflas. Mr. Ivanova respectfully requests that this motion be granted, the contempt order purged, and the bench warrant quashed in order to allow him to travel to the United States to attend the premiere of that biography about his father.

## II. FACTUAL BACKGROUND

### A. Cantinflas Was One of Mexico's Most Famous and Successful Actors

Mario Moreno Reyes was a Mexican comic film actor, producer, and screenwriter more commonly known as Cantinflas. [Ivanova Dec. ¶ 3.] He was a pioneer in the Mexican cinema, starring in at least 39 motion pictures. [*Id.* ¶ 4.] Among other roles, Cantinflas starred with David Niven in the 1954 version of *Around the World in 80 Days*, for which Cantinflas won a Golden Globe award as best actor. [*Id.* ¶ 5.]

### B. Extended Litigation Over the Rights in the Cantinflas Library

Cantinflas died at the age of 81 on April 20, 1993. [Ivanova Dec. ¶ 6.] Following his death, various parties asserted rights in his films. [*Id.* ¶ 7.] The result was extended litigation in a number of suits both in the United States and in Mexico, including the instant action. [*Id.*]

### C. The Judgment in Favor of Columbia Pictures and the Contempt Orders

In this action, Judge Rea ultimately ruled that Columbia Pictures possessed the rights to at least 34 Cantinflas movies, and the Court entered a permanent injunction requiring Mr. Ivanova to disclose all purported licensing activities relating to the films, cease any future licensing activities, and turn over all film elements in his possession relating to those 34 movies. [Dkt. #899 (revised final judgment).]

After Mr. Ivanova failed to comply with the Court's judgment, Columbia Pictures sought and received contempt orders holding Mr. Ivanova in contempt for his failure to comply with the orders. [Dkt. # 933, Dkt. # 939, Dkt. #948, Dkt. #950 (collectively, the "Contempt Orders").] The Contempt Orders provided for the issuance of a bench warrant calling for Mr. Ivanova's arrest and incarceration until he complied with the terms of the Court's judgment. [*Id.*]

**D. Mr. Ivanova Settled With Columbia Pictures and Complied with the Order to the Extent Possible.**

On or about October 10, 2012, Mr. Ivanova settled with Columbia Pictures. [Ivanova Dec. ¶ 8.] While the terms of the settlement are confidential, the parties can disclose that the matter was resolved in a matter satisfactory to Columbia Pictures. [*Id.*]

Mr. Ivanova has disclosed his purported licensing activities to Columbia Pictures. [Ivanova Dec. ¶ 9.] Mr. Ivanova has both ceased any efforts to license the films and disclaimed any future right to license the films at issue in this action. [*Id.*]

As to the film elements, Mr. Ivanova has turned over all film elements in his possession, custody or control. [Ivanova Dec. ¶ 10.] Mr. Ivanova understands that Columbia Pictures seeks certain additional film elements that are currently being held by a former associate of Mr. Ivanova who is refusing to turn them over to either Mr. Ivanova or Columbia Pictures. [*Id.*] Because the elements belong to Columbia Pictures, Mr. Ivanova is not able to file suit himself to recover those film elements. [*Id.*] However, Mr. Ivanova is cooperating with Columbia Pictures in its actions, and Mr. Ivanova has moreover filed criminal charges against the former associate for his conduct in this matter. [*Id.* ¶ 12.] Mr. Ivanova is doing everything he can reasonably do, and he has no further ability to comply with the Contempt Order beyond what he has done. [*Id.* ¶ 13.]

**E. Columbia Pictures Does Not Oppose This Motion or the Purging of the Contempt Sanctions.**

Mr. Ivanova's current counsel has coordinated with counsel for Columbia Pictures to assist Mr. Ivanova in fulfilling his obligations under the Contempt Orders and the settlement agreement. [Dec. of Michael S. Adler ("Adler Dec.") ¶ 2.]

In this regard, counsel for Columbia Pictures has informed Mr. Ivanova's counsel that Columbia Pictures does not oppose this motion or the purging of the contempt sanctions. [Adler Dec. ¶ 3 and Ex. 1.] Columbia Pictures understands that Mr. Ivanova has pledged to fully support any effort by Columbia to recover the film elements, and Columbia Pictures has reserved the right to seek judicial assistance in the future if it appears that Mr. Ivanova is no longer supporting the efforts of Columbia Pictures.

**F. Mr. Ivanova Would Like to Attend the Premiere of the Biography About His Late Father, Cantinflas.**

The life of Cantinflas is the subject of a major motion picture being released in the United States on August 29, 2014. [Ivanova Dec. ¶ 14.] In connection therewith, the producers of the film have invited Mr. Ivanova to attend the premiere of that movie here in Los Angeles. [*Id.*] Mr. Ivanova would like to attend that premiere, but cannot do so while a bench warrant is outstanding for his arrest. [*Id.*] Mr. Ivanova therefore respectfully requests that the contempt sanctions be purged and the warrant be quashed. [*Id.*]

## III. THE CONTEMPT ORDERS MUST BE PURGED

The Contempt Orders in this case are civil contempt orders. [Dkt. # 933, Dkt. # 939, Dkt. #948.] It is a matter of black-letter law that contempt orders exist to encourage compliance with the Court's orders and that such sanctions must terminate when the party has complied with the Court's orders since there is no longer any need

to encourage compliance. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911) (civil contempt only to "coerc[e] the defendant to do" what the court previously ordered); *Turner v. Rogers*, -- U.S. ---, 131 S.Ct. 2507, 2516, 180 L.Ed.2d 452 ("Once a civil contemnor complies with the underlying order, he is purged of the contempt and is therefore free."); *see also Int'l Union, United Mine Workers of Am. V. Bagwell*, 512 U.S. 821, 826-30, 114 S.Ct. 2552, 129 L.Ed. 2d 642 (1994).

Moreover, when the contemnor shows that he cannot comply with the Court's order, the Court must likewise purge the contempt sanction since the sanction can no longer meaningfully encourage compliance. *Hicks v. Feiock*, 485 U.S. 624, 638 nb.9, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548 75 L.Ed.2d 521 (1983); *Maggio v. Zeitz*, 333 U.S. 56, 75-76, 68 S.Ct.401, 92 L.Ed. 476 (1948). As the U.S. Supreme Court explained more than sixty years ago, a contemnor can secure his freedom from the contempt charges by showing that there is "no wilful disobedience but only an incapacity to comply." *Maggio*, 333 U.S. at 74, 68 S.Ct. 401; *see also Armstrong v. Guccione*, 470 F.3d 89, 101 (2nd. Cir. 2006).

The *Armstrong* case is instructive. In that case, the contemnor had been incarcerated for failing to produce corporate assets and records pursuant to a court order. *Armstrong*, 470 F.3d. at 95. The Second Circuit noted that although the contemnor had previously been found able to comply in a number of hearings, the courts had to recognize that "circumstances can change" and no court had evaluated the issue over the prior two years. *Id.* at 113. As such, the lower courts were obligated to review the current circumstances and determine whether there was any showing "regardless of past findings, whether the person is presently capable of complying." *Id*. Moreover, the person must be able to legally comply with the Court's order.

*United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 899 F.2d 143, 147 (2d. Cir. 1990) (contempt order cannot require the contemnor to overstep his lawful authority). In other words, the court cannot force an individual to take illegal or illegitimate acts as a condition for purging the contempt sanction. *Id.*

The facts in this case are simple: Mr. Ivanova has done what he can to comply with the Contempt Orders. [Ivanova Dec. ¶¶ 9-14.] He has disclosed his past licensing efforts and he has ceased and disclaimed any future licensing efforts. [*Id.*] He has turned over those film elements in his possession, custody, or control. [*Id.*] To the extent that there are additional film elements at issue, Mr. Ivanova is using his best efforts to secure those film elements but they are not in his possession, custody, or control and he cannot deliver them to Columbia Pictures. [*Id.*] He cannot legally break into the warehouse of his former associate or seize property currently in that associate's possession. [*Id.*] Mr. Ivanova is working with Columbia Pictures and providing any and all reasonable assistance to them. [*Id.*]

Columbia Pictures understands the nature of Mr. Ivanova's efforts in this regard, and as mentioned above, Columbia Pictures therefore does not object to the purging of the contempt sanctions or the quashing of the bench warrant in this case. [Adler Dec. ¶3 and Ex. 1.]

In other words, Mr. Ivanova has either complied with the terms required by the civil contempt order or has no present capacity to do so. Under those circumstances, the contempt order should be purged and the bench warrant quashed. *Maggio*, 333 U.S. at 74, 68 S.Ct. 401; *Armstrong*, 470 F.3d at 101.

## IV. CONCLUSION

For the reasons discussed above, Defendant Mario Moreno Ivanova respectfully requests that the Court purge the Contempt Orders in this case and issue an order quashing the bench warrant for his arrest.

DATED: July 18, 2014

Tantalo & Adler LLP

By: /s/ Michael S. Adler
Michael S. Adler
Attorneys for Mario Moreno Ivanova